IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

QUANDARIAN FAULKNER,  #259678,      )
                                    )
          Plaintiff,                )
                                    )
     v.                             )      CIVIL ACTION NO. 2:14-CV-1241-WKW
                                    )
TODD INGRAM, et al.,                )
                                    )
          Defendants.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Quandarian Faulkner ("Faulkner"), a state inmate, in which he challenges the

constitutionality of actions undertaken with respect to his arrest for possession of

marijuana in the second degree, a violation of Ala. Code 13A-12-214(a), and for felon in

possession or control of a pistol, a violation of Ala. Code 13A-11-72(a).[2]  Specifically,

Faulkner complains that on July 15, 2013, Keith Avery, an officer with the Maplesville

Police Department, subjected him to an illegal arrest without probable cause or a warrant

in violation of his Fourth and Fourteenth Amendment rights.  Doc. No. 1-6 at 1, 4.  He

also "alleges the state Tort of False arrest and imprisonment."  Doc. No. 1 at 1.  Finally,

Faulkner contends that Todd Ingram, the Chief of Police for the Maplesville Police

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]Faulkner initiated this case by filing a complaint in the Circuit Court of Chilton County, Alabama.  The defendants removed the case to this court pursuant to 28 U.S.C. § 1441(a).

Department, failed to properly train and supervise Avery, and this failure resulted in his illegal arrest.  Doc. No. 1-6 at 2, 4.[3]  Faulkner seeks issuance of a declaratory judgment, injunctive relief and compensatory damages.  Doc. No. 1-6 at 5.

The defendants filed a special report and supporting evidentiary materials, including affidavits and state court records, addressing Faulkner's claims for relief.  In these documents, the defendants deny violating Faulkner's constitutional rights and state law.  The court issued an order directing Faulkner to file a response to the report, including affidavits, sworn statements or other evidentiary materials.  Doc. No. 10 at 1-3. The order specifically cautioned the parties that unless "**sufficient legal cause**" is shown within fifteen (15) days of entry of this order "**why such action should not be undertaken**, . . . the court may at any time [after expiration of the time for the platiniff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. No. 10 at 2-3. Faulkner filed a response (Doc. No. 15), supported by an affidavit (Doc. No. 15-1), and unsworn statements of purported undisputed/disputed issues of fact (Doc. No. 16 and Doc. No. 17) in opposition to the defendants' report.

Pursuant to the order entered requiring a response from the plaintiff, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.

---

[3]The court construes the failure to train and supervise claim as a claim arising under both federal and state law.

Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the complaint and Faulkner's response to the defendants' report, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*,

---

[4]Although stylistic changers were made to Rule 56 in December of 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324. A fact is material if it is relevant or necessary to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes of fact not material to the outcome of a case do not preclude entry of summary judgment in favor of the moving party. *Id*. at 247-248 (The summary judgment "standard provides that the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

The defendants have met their evidentiary burden. The burden therefore shifts to Faulkner to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting

materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).   This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).   A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.   *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).   In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.   In respect to the latter, our inferences must accord deference to the views of prison authorities.   Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."   *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.   *Anderson*, 477 U.S. at 249; Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not

significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if [the evidence] in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Sers.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record and, as it must at this stage of the proceedings, made "all reasonable inferences in favor of [Faulkner]."  *Chapman*, 229 F.3d at 1023.  After such

review, the court finds that Faulkner has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary judgment in favor of the defendants.

### III.  RELEVANT FACTS[5]

In February of 2013, Faulkner was released on probation from sentences imposed upon him by the Circuit Court of Jefferson County, Alabama, for four counts of first degree robbery and two counts of attempted murder.  On July 15, 2013, Faulkner and a female friend, Latasha James, were in James's red Nissan Xterra traveling on Highway 22 in Chilton County, Alabama.  James was driving the vehicle while Faulkner occupied the front passenger's seat.  At approximately 11:30 p.m., Officer Avery approached the Xterra in his patrol car, observed that the vehicle did not have a functioning tag light and conducted a routine traffic stop.  Avery exited his patrol car and walked towards the driver's side of the Xterra.  As he approached the vehicle, Avery smelled a strong odor of marijuana emanating from the Xterra.  Avery identified the individuals in the Xterra and then requested permission from James to search the vehicle.  James consented to Avery's search of her vehicle.

During his search, and as is relevant to this case, Avery located a cup in the console between the front seats which contained a marijuana blunt.  Faulkner claimed ownership of the marijuana blunt.  Avery continued his search and found two handguns, a black nine millimeter, and a stainless steel Cobra .380, in a gym-type bag on the back

---

[5]The facts are gleaned from the plaintiff's complaint and the certified state court records.

seat of the Xterra directly behind Faulkner and within his reach.  According to Faulkner, Ms. James eventually claimed ownership of both handguns during the traffic stop.  Doc. No. 1-6 at 2.[6]

While on the scene, Avery contacted the Chilton County 911 Dispatch and received information regarding Faulkner's probationary status.  Avery then searched the Law Enforcement Technology System available in his patrol car and obtained information regarding Faulkner's 2008 Jefferson County felony convictions.  At this time, Avery arrested Faulkner for possession of marijuana in the second degree and felon in possession of a pistol.

On October 16, 2013, the Circuit Court of Jefferson County, Alabama conducted a probation revocation hearing addressing whether to continue the probationary term of the sentence(s) imposed upon Faulkner for the attempted murder and robbery convictions. With respect to the new charges of possession of marijuana and felon in possession, Officer Avery testified, in relevant part on direct by the prosecutor, as follows:

> Q. . . . [T]ell the Court how you first came in contact with Mr. Faulkner.
> A. I was traveling down 22 going towards Selma on a routine patrol when I noticed a red Xterra with no tag lights.   So in

---

[6]Officer Avery adamantly disputes this assertion and maintains that during the traffic stop Ms. James only acknowledged ownership of the nine millimeter handgun.  In determining whether a genuine dispute of material fact exists to defeat summary judgment, this court must view the evidence in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson*, 477 U.S. at 255; *Chapman*, 229 F3d at 1023.  Despite the foregoing directive, the instant factual dispute does not preclude entry of summary judgment.  Specifically, Faulkner's lack of ownership of the pistol(s) found in Ms. James's vehicle does not constitute a material fact as ownership is not an element of the charged offense nor is it relevant to whether Faulkner was in constructive possession of a pistol at the time of his arrest, which, if proven, along with his prior felony offenses, would establish a violation of Ala. Code § 13A-11-72(a).  *See infra* at 20.

Maplesville, it's a common stop for us to stop vehicles with no tag lights to warn people.

I made a traffic stop on them. . . .  I approached the vehicle.  As the window rolled down to speak to the driver, a strong odor of marijuana rolled out from the vehicle.  [Avery testified he was familiar with the smell of marijuana and the odor was easily recognizable to him.] . . .

Q.  Were you able to determine who the driver of the vehicle was?

A.  Yes, sir.  Her name was Ms. James.  I think it was Latasha James.

Q.  Was this defendant [Quandarian Faulkner] in that car at all?

A.  Yes, sir.

Q.  Where was he sitting?

A.  Passenger seat.

Q.  Is that the front passenger seat?

A.  Yes, sir, front passenger seat.

Q.  What did you do after you initially went up to the car and observed the odor of marijuana?

A.  I asked the driver for permission to search, and Ms. James gave me permission to search.

Q.  So did you search the vehicle?

A.  Yes, sir.

Q.  Will you tell the Court . . . what, if anything, you found during your search of that car?

A.  Upon searching the vehicle, I found ten white pills, which, that I charged the driver with possession of illegal prescription pills. And then, as I continued on the search, because I could smell the marijuana real strong, I observed a cup.  I opened the lid up, and there was a marijuana blunt in the cup.

Q.  Okay.  Let me ask you about the cup.  Where was it located in the vehicle.

A.  In between the console of the two passengers.  The passenger and the driver's seat.

Q.  Did you inquire with either Ms. James or this defendant about who the cup belonged to?

A.  It was his cup.  He claimed the cup.  He claimed the marijuana.

Q.  Okay.  Did you continue to search the car?

A.  Yes, sir.

Q.  Will you tell the Court what, if anything, else you found in the vehicle?

A.  I found two handguns in the back seat, behind the passenger's front seat that was in a little red, like, tote bag.  I found a black nine millimeter and then a Cobra, which is a stainless steel heavy grade old-fashioned .380.

Q.  And will you describe for us, please, sir, where those guns were in relation to Mr. Faulkner?

A.  They were directly back behind the passenger seat.

Q. In your observation would that have been closer to Mr. Faulkner or closer to Ms. James, the driver?

A.  Been closer to the passenger, Mr. Faulkner.

Q.  Did you ask either Ms. James or this defendant who the guns belonged to?

A.  Yes, sir, I did.

Q.  Will you tell us what they told you, please, sir?

A.  At first, Ms. James claimed one.  She claimed the black nine millimeter.

Q.  Okay.  Did you ask her about the second gun?

A.  She was sort of skeptical on answering that question.  But Mr. [Faulkner] proceeded in asking her, "You know they're yours, baby.  You know they're your guns."

Q.  He was telling her that?

A.  Yes.

Q.  At that point, what did you do, Officer Avery?

A. At that point I arrested both of them.  I arrested her for illegal prescription pills, and arrested him for POM II and a felony – for possession of a firearm.

Q. You said "POM II."  Is that Possession of Marijuana, Second Degree?

A.  Yes.

Q.  Were you able to determine who the car belonged to?

A.  Through the tag it belonged to Ms. James.

Q.  But she only claimed one of the guns found in the backseat?

A.  On the scene, yes, sir.

Doc. No. 9-1 at 36-40.  On cross examination by defense counsel, Avery reiterated his testimony that during the traffic stop Ms. James claimed only one of the handguns, i.e., the black nine millimeter, found on the back seat of the Xterra.  Doc. No. 9-1 at 45. Avery acknowledged that "the guns were located in a bag in the backseat of the car

[owned by Ms. James]" and "[i]n a bag that belonged to her[.]"   Doc. No. 9-1 at 49. However, a thorough and comprehensive review of the probation revocation transcript establishes that nowhere in his testimony does Avery admit that Ms. James claimed ownership of both the handguns.   Finally, Avery testified that Ms. James did not present a permit to him for either of the handguns on the scene of the traffic stop but did, at a later date, present a permit "in relation to the weapon that she claimed" to Chief Ingram at the police station.[7]   Doc. No. 9-1 at 50-51.   Faulkner's grandmother was the only witness for the defense at the probation revocation hearing.

Upon conclusion of the probation revocation proceedings, the trial court revoked Faulkner's probation based on its reasonable satisfaction that Faulkner possessed both a handgun and marijuana at the time of the July 15, 2013 traffic stop.   Doc. No. 9-1 at 75-76.   The trial court therefore ordered Faulkner to serve the remaining fifteen years of his sentence.   Doc. No. 9-1 at 76.   The Alabama Court of Criminal Appeals affirmed the revocation of probation.   Doc. No. 9-1 at 89.   Faulkner is currently incarcerated on this 15-year sentence.[8]

---

[7]In an affidavit filed in support of his response to the special report, Faulkner stated under penalty of perjury that "[d]uring defendant Avery testimony under oath at the revocation hearing, he admitted Ms. James showed him a permit to carry a firearm and she claimed ownership of the nine millimeter and 380 handguns at the crime scene." Doc. No. 15-1 at 2.   This statement is not true as Avery testified that Ms. James did not show him a permit during the traffic stop and that she only claimed ownership of the .380 pistol at that time.   For this same reason, Faulkner's statement in his sworn complaint that "[at] the revocation hearing defendant Avery testified under oath 'the . . . two (2) handguns . . . belonged to Ms. James[,]'" Doc. No. 1-6 at 3, is likewise not true.   Faulkner's submission of these false and seemingly perjured statements is not well-taken by this court.

[8]According to the consolidated case action summary of Faulkner's criminal cases on the Alabama Trial Court System (hosted at www.alacourt.com), of which this court takes judicial notice, a Chilton County grand jury issued a two-count indictment against Faulkner on January 29, 2016 for felon in possession of a pistol and possession of marijuana in the second degree.   *See Keith v. DeKalb Cty.*, 749 F.3d 1034, 1041

## IV.  RESPONSE OF DEFENDANTS

The defendants deny they acted in violation of Faulkner's constitutional rights or state law.  In support of this assertion, defendant Avery submitted an affidavit in which he avers that:

> On July 15, 2013 I was employed as a Police Officer for the Maplesville Police Department and working a regular patrol shift.
>
> While traveling south on Highway 22 towards Selma, Alabama I noticed a red Nissan Xterra with its tag lights out.  I then made a traffic stop of the Xterra.  When the driver rolled down the window I detected a strong odor of marijuana [coming] from inside the vehicle.
>
> I identified the driver [and owner of the Xterra] as Latasha James.  I identified the man in the front passenger seat as Quandarian Faulkner.
>
> James gave me permission to search the vehicle.  During my search I observed a cup with a lid on it.  The cup was located in the console between the front seats.  When I removed the lid I found a marijuana blunt in the cup.
>
> Faulkner claimed ownership of the cup and the marijuana.
>
> I then found a red tote bag located in the backseat directly behind the front passenger seat where Faulkner had been sitting and within arms' reach of Faulkner.  Inside the bag was a black, nine millimeter pistol and a stainless steel .380 Cobra pistol.  Both pistols were fully loaded with a bullet in the chamber.
>
> James claimed ownership of the black nine millimeter.  She did not claim ownership of the .380 Cobra pistol.  Faulkner attempted to get James to claim the .380 Cobra pistol but she refused to do so.
>
> While on the scene I spoke with the Chilton County 911 Dispatch who informed me Faulkner was on probation.  I searched the LET (Law Enforcement Technology) system in my patrol car and found that Faulkner was a convicted felon who was on probation for attempted murder and robbery, 1st degree.
>
> I arrested Faulkner for possession of marijuana and possession of a pistol, which is a violation of Ala. Code (1975) § 13A-11-72(a).  I then transported Faulkner to the Chilton County Jail.

---

n. 18 (11th Cir. 2014) ("We take judicial notice of [the State's] Online Judicial System.") (citing Fed. R. Evid. 201).  The case action summary also shows that Faulkner's cases are currently set on the plea docket of the Circuit Court of Chilton County for August 31, 2017.

I testified at Faulkner's probation revocation hearing on October 13, 2013. After that I have had no involvement with Faulkner or with his probation revocation.

Doc. No. 9-1 at 98-100 (paragraph numbering omitted). In his affidavit, Chief Ingram maintains and it is undisputed that he did not participate in Faulkner's arrest. Doc. No. 9-1 at 102. Ingram further states "I have never been made aware of complaints about Officer Avery wrongfully or unlawfully arresting any individuals nor am [I] aware of any history or incidents of Officer Avery unlawfully arresting individuals." Doc. No. 9-1 at 103.

## V. DISCUSSION

### A. Federal Claims

1. <u>Qualified Immunity</u>. The defendants raise the defense of qualified immunity to the federal claims lodged against them. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir.2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted). "Because qualified immunity is only a defense to personal

liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995). Additionally, "qualified immunity is a defense only to federal claims [lodged against government officials in their individual capacities] . . . for monetary relief[.]" *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995).

In this case, Faulkner sues the defendants in both their individual and official capacities. Doc. No. 1-6 at 2. Moreover, Faulkner does not limit his request for relief to monetary damages but also seeks declaratory and injunctive relief. Doc. No. 1-6 at 5. It is therefore clear that a decision on qualified immunity would not be determinative of all issues pending herein as the court would still be required to address whether the actions of the defendants violated Faulkner's constitutional rights with respect to his claims against the defendants in their individual capacities insofar as he seeks relief other than monetary damages and each of his claims for relief lodged against the defendants in their official capacities. Thus, the court will forego any further discussion of qualified immunity and address the merits of the federal claims presented by Faulkner.

2. <u>Unlawful Arrest</u>. Faulkner contends that Officer Avery arrested him for felon in possession of a handgun without probable cause in violation of his constitutional rights. Doc. No. 1-6 at 3. "The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

> To establish a violation of the Fourth Amendment, [a plaintiff] must demonstrate that [his] arrest was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.") (quotation marks omitted). An arrest is unreasonable if it is not supported by probable cause. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

*Walker v. City of Hunstville, Ala.*, 310 F. App'x 335, 337 (11th Cir. 2009). "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends upon the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). It is well-settled that "probable cause is a flexible, common-sense standard. . . . [I]t does not demand any showing that [the officer's belief an offense has been or is being committed] is correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause to arrest is present when the arrest is "objectively reasonable based on the totality of the circumstances. . . . This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. . . . Although probable cause

requires more than suspicion, it does not require convincing proof . . . and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citations omitted); *Brown*, 608 F.3d 734  ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."); *see also Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.").   "Whether probable exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Pringle*, 540 U.S. at 371).

"To determine whether an officer had probable cause to arrest an individual, [federal courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."  *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  In making this determination, a court must examine the elements of the charge(s) on which the plaintiff was arrested as the question of "[w]hether a particular set of facts gives rise to probable cause . . . to justify an arrest for

a particular crime depends, of course, on the elements of the crime." *Crosby*, 394 F.3d at 1333.

It is undisputed that at the time of the arrest challenged herein Faulkner was on probation for two counts of attempted murder and four counts of first degree robbery, information known to Officer Avery prior to his arrest of Faulkner. The relevant material facts demonstrate that Officer Avery performed a routine traffic stop on a vehicle in which Faulkner was in the front passenger's seat. As he approached the vehicle, Avery smelled a strong odor of marijuana emanating from the vehicle. After obtaining permission from the driver and owner of the vehicle to search the vehicle, Avery proceeded to conduct a search during which he found a marijuana blunt in a cup in the front console between the driver and passenger. Faulkner claimed ownership of the marijuana blunt. After finding the marijuana, Avery continued his search and located two handguns, a black 9 millimeter and .380 caliber stainless steel Cobra, in a bag on the back seat of the vehicle directly behind and within arms' reach of Faulkner. The driver of the vehicle claimed ownership of both handguns. Based on all of this information, Officer Avery arrested Faulkner for second degree possession of marijuana in violation of Ala. Code § 13A-12-214(a) and for being a felon in possession of a handgun in violation of Ala. Code § 13A-11-72(a).

Section 13A-12-214(a) directs that "[a] person commits the crime of unlawful possession of marijuana in the second degree if, except as otherwise authorized, he

possesses marihuana for his personal use only."[9]   Section § 13A-11-72(a) makes it a crime for any "person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence [to] own a pistol or have one in his or her possession or under his or her control."   "[O]wnership of a pistol is not a requirement for a violation of the statute; rather, constructive possession of a pistol and a prior conviction for a crime of violence will support a conviction [for being a felon in possession of a pistol under]." *Burton v. State*, 728 So.2d 1142, 1148 (Ala. Cr. App. 1997); *Dickerson v. State*, 517 So.2d 625, 62 (Ala. Cr. App. 1986), *rev'd on other grounds*, 517 So.2d 628 (Ala. 1987) ("[O]wnership of a pistol is not a requirement to the violation of [Ala. Code § 13A-11-72(a)]; rather, constructive possession of a pistol and a prior conviction for a crime of violence will support a conviction."); *see also United States v. Howell*, 425 F.3d 971, 976-77 (11th Cir. 2005) (holding that constructive possession of firearm by a convicted felon is prohibited by federal law).   Thus, an individual's lack of ownership of a pistol is irrelevant to whether probable cause existed to arrest him for a violation of Ala. Code § 13A-11-72(a).

At the time of the challenged arrest, Officer Avery knew that Faulkner had prior convictions for attempted murder and first degree robbery.   In addition, the facts and

---

[9]Interestingly, Faulkner focuses his complaint solely on whether Officer Avery had probable cause to arrest him for possession of a pistol, completely ignoring whether probable cause existed to arrest him for possession of marijuana in the second degree.   It is arguable that this omission is significant because the record establishes Faulkner conceded ownership of the marijuana blunt during the traffic stop.   Under applicable federal law as cited herein, this admission alone provided Officer Avery with probable cause to arrest Faulkner.   Nevertheless, this court need not rest its holding on this ground as the record demonstrates that Officer Avery also possessed probable cause to arrest Faulkner for being a felon in possession of a pistol.

circumstances known to Officer Avery at such time reasonably suggested that Faulkner was in constructive possession of a pistol.  Consequently, probable cause existed to arrest Faulkner for being a felon in possession of a pistol.[10]

3.  <u>Failure to Train and Supervise</u>.  Faulkner complains that Chief Ingram failed to properly train and supervise Officer Avery, thereby causing the alleged false arrest.  This claim provides no basis for relief as this court has determined that no constitutional violation occurred with respect to Faulkner's arrest.  *Beshers v. Harrison*, 495 F.3d 1260, 1264, n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude no [predicate] constitutional violation occurred."); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (holding that plaintiff's claims based on supervisory liability could not succeed without an underlying constitutional violation); *Walker*, 310 F. App'x at 339 (holding that claims against police chief and city for enacting policies that allegedly resulted in a constitutional violation "fail because we have found there is no underlying constitutional violation.").  Thus, Chief Ingram is entitled to summary judgment on the claim lodged against him.

## B.  Perjury

Faulkner alleges defendant Avery provided "false facts" during the probation revocation hearing.  Doc. No. 1-6 at 4.  Insofar as this allegation can be construed to assert a claim of perjury, Faulkner is entitled to no relief.  Although perjury is a criminal offense under federal law, *see* 18 U.S.C. § 1621, "there is no federal civil remedy for

---

[10]As previously noted, it is undisputed that probable cause existed to arrest Faulkner for second degree possession of marijuana.  *See supra* note 9.

perjury. *See Smith v. Fenner*, 1999 WL 592663, at *2 (N.D. Tex. Aug. 6, 1999) (dismissing claim for no subject matter jurisdiction because federal civil claim for perjury does not exist); *see also Roemer v. Crow*, 993 F. Supp. 834, 836-37 (D. Kan. 1998) (dismissing claims as frivolous because 18 U.S.C. § 1621 'is a criminal statute which does not provide a civil right of action for damages') [*aff'd*, 162 F.3d 1174 (10th Cir. 1998)]." *Burnett v. Nagl Mfg*., 2008 WL 234765, at *2 (D. Neb. Jan. 25, 2008); *see also Briscoe v. LaHue*, 460 U.S. 325, 334-336 (1983) (all witnesses, including government officials, are entitled to absolute immunity from damages liability for their testimony in judicial proceedings); *Freeze v. Griffith*, 849 F.2d 172, 174 (5th Cir. 1988) (holding that whether individual lied as either a witness or petit juror is immaterial because "he is absolutely immune from liability for damages under 42 U.S.C. § 1983."); *Austin v. Borel*, 830 F.2d 1356, 1359 (5th Cir. 1987) ("Witnesses, including police officers, who testify in judicial proceedings are . . . shielded by absolute immunity.").   Defendant Avery is therefore entitled to summary judgment on this claim.

### C.  Challenge to the Revocation of Probation

To the extent the complaint can be construed to present claims challenging the revocation of Faulkner's probation, these claims are not cognizable in this § 1983 action. Specifically, because such claims go to the fundamental legality of his incarceration, they provide no basis for relief at this time. *Edwards v. Balisok,* 520 U.S. 641, 646 (1997)*; Heck v. Humphrey,* 512 U.S. 477 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

In *Heck*, the Supreme Court held that claims challenging the legality of a prisoner's confinement are not cognizable in a 42 U.S.C. § 1983 action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. The relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of" the fact or duration of his confinement. *Heck*, 512 U. S. at 487; *Balisok*, 520 U.S. at 648 (inmate's claims for declaratory relief, injunctive relief or monetary damages which "necessarily imply the invalidity of the punishment imposed, [are] not cognizable under § 1983."). Thus, the rule of *Heck* is not limited to a request for damages but is equally applicable to an inmate's request for declaratory judgment or injunctive relief. *Balisok*, *supra*. "It is irrelevant that [the plaintiff] disclaims any intention of challenging [the basis for his incarceration]; if he makes allegations that are inconsistent with the [action] having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), citing *Balisok*, 520 U.S. at 646-648.

The law is well-settled that "habeas corpus is the exclusive remedy for a . . . prisoner who challenges" the basis for or duration of his incarceration. *Heck*, 512 U.S. at 481; *Balisok*, 520 U.S. at 645 (The "sole remedy in federal court" for a prisoner challenging the constitutionality of incarceration on a sentence of a state court is a petition for writ of habeas corpus.); *Okoro*, 324 F.3d at 490 (*Heck* directs that a state inmate "making a collateral attack on [the basis for his incarceration] . . . may not do that in a civil suit, other than a suit under the habeas corpus statute."). An inmate "cannot

seek to accomplish by a section 1983 declaratory judgment what he must accomplish solely through a writ of habeas corpus." *Jones v. Watkins*, 945 F. Supp. 1143, 1151 (N.D. Ill. 1996); *Miller v. Indiana Dep't of Corrections*, 75 F.3d 330, 331 (7th Cir. 1996) (Under *Heck*, "[t]he [determinative] issue . . . is not the relief sought, but the ground of the challenge."); *Cook v. Baker, et al.*, 139 F. App'x 167, 169 (11th Cir. 2005) (The "exclusive remedy" for a state inmate's claim challenging the basis for or validity of his incarceration "is to file a habeas corpus petition pursuant to 28 U.S.C. § 2254[.]").  In *Balisok*, the Supreme Court emphasized "that a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id*. at 649.  The principles espoused in *Heck* and *Balisok* apply to revocations of probation. *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995).

Under the circumstances of this case, *Heck* and its progeny bar Faulkner's utilization of any federal civil action, other than a petition for habeas corpus relief under 28 U.S.C. § 2254, to mount a collateral attack on the revocation of probation as it constitutes the basis for his current incarceration.  512 U.S. at 489 ("We do not graft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted [all] available state remedies has no cause of action under § 1983 unless and until the [basis for incarceration] is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."); *Abella v. Rubino*, 63 F.3d 1063, 1066 n.4 (11th Cir. 1995) ("*Heck* clarifies that *Preiser* is a rule of cognizability, not exhaustion.").  Thus, Faulkner cannot proceed in this cause of action on

any claim upon which a favorable decision would necessarily imply the invalidity of his

probation revocation and resultant incarceration.

### D.  State Law Claims – Supplemental Jurisdiction

Faulkner seeks relief from this court on pendent state law claims against defendant

Avery for false arrest and false imprisonment and against defendant Ingram for failure to

properly train and supervise Avery.  However, review of any state law claim is

appropriate only upon exercise of this court's supplemental jurisdiction.  In the posture of

this case, the court concludes that exercise of supplemental jurisdiction over Faulkner's

referenced state law claims is inappropriate.

> To exercise pendent jurisdiction [—which is now referred to as
> supplemental jurisdiction—] over state law claims not otherwise cognizable
> in federal court, "the court must have jurisdiction over a substantial federal
> claim and the federal and state claims must derive from a 'common nucleus
> of operative fact.'"  *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th
> Cir.1981) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct.
> 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Miller & E.
> Cooper, Federal Practice and Procedure: Jurisdiction § 3567 pp. 443-47
> (1975).

*L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The

exercise of supplemental jurisdiction is completely discretionary.  *Gibbs*, 383 U.S. at 726.

In removal cases where it is determined that the federal claim provides no basis for

relief, the court may, in its discretion, decline to exercise supplemental jurisdiction over

the remaining state law claims under 28 U.S.C. § 1367(c)(3) and remand the case to the

appropriate state court.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 345 (1988) ("[A]

federal district court has discretion under the doctrine of pendent[/supplemental]

jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain.").  When determining whether to retain jurisdiction over supplemental state law claims or remand these claims to the appropriate state court, the factors to consider are "judicial economy, convenience, fairness and comity."  484 U.S. at 350.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent[/supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  484 U.S. at 350 n.7.  Here, the court finds that these factors weigh in favor of remanding this case back to the state court for determination of the supplemental state law claims.

Initially, remanding the state law claims will conserve this court's limited judicial resources.  Moreover, remand of these claims to the state court will not unduly inconvenience the parties.  Principals of comity likewise weigh heavily in favor of remand as all remaining claims and the majority of defenses thereto arise under Alabama law and are clearly "best suited for determination by a state court."  *Lake Cty. v. NRG/Recovery Grp., Inc*., 144 F. Supp. 2d 1316, 1321 (M.D. Fla. 2001); *Ansley v. Prof. Resources Mgmt. Inc*., 2013 WL 5775154, at *3 (M.D. Ala. Oct. 25, 2013) (finding that where the only "remaining claims . . . concern interpretation and application of Alabama law . . . comity weighs in favor of remand."); *Gibbs*, 383 U.S at 726 (advising that "[n]eedless decisions of state law should be avoided both as a matter of comity and to

promote justice between the parties, procuring for them a surer-footed reading of applicable law.").  The court also finds that remand of the supplemental state law claims will not result in unfairness to the parties.  Finally, remand of the state claims is preferred to dismissal of those claims as such action protects Faulkner from any applicable statutes of limitations on his state law claims and will save him the expense of re-filing the case in state court.

For the foregoing reasons, the undersigned concludes that this court should decline to exercise supplemental jurisdiction over the state law claims presented by Faulkner and remand this case to the Circuit Court of Chilton County, Alabama for further proceedings on these claims.

## VI.  CONCLUSION

Accordingly, it is the Recommendation of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be granted as to the plaintiff's Fourth and Fourteenth Amendment claims of false arrest and failure to train and supervise.

2.  The plaintiff's challenges to the constitutionality of his arrest and his claim of perjury be dismissed with prejudice.

3.  To the extent the complaint raises claims challenging the constitutionality of the revocation of the plaintiff's probation, these claims are dismissed without prejudice as such claims are not cognizable in this cause of action.

4.  This case, as to the claims alleging violations of the plaintiff's constitutional rights, be dismissed.

5.  This case, with respect to the plaintiff's pendent state law claims of false arrest/imprisonment lodged against Keith Avery and his intimately related claim of failure to properly train and supervise presented against Todd Ingram be remanded back to the Circuit Court of Chilton County, Alabama for disposition as this court deems it inappropriate to exercise supplemental jurisdiction over these claims.

6.  No costs be taxed herein.

The parties may file objections to the Recommendation on or before July 25, 2017. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 11th day of July, 2017.


                              /s/   Wallace Capel, Jr.
                    _____
                    CHIEF UNITED STATES MAGISTRATE JUDGE